Milligan, J.,
delivered the opinion of the Court.
This bill was filed in the Chancery Court of Fay-ette County, to enjoin the collection of a judgment at law, recovered by the defendant, in June, 1859, against the complainants, for $2,082.35. The note upon which this judgment seems to have been predicated, was given in' discharge and satisfaction of the following obligation, viz:
“$1,695.05. Fayette Co., Tenn., Dec. 12, 1854.
“On the 15th day of December, 1856, we, or either of us, promise to pay IT. A, Tatum, or order, the sum of sixteen hundred and ninety-five 05-100 dollars, it being one-half the amount bid for 406 acres of land, belonging to the heirs of Elizabeth N. Tatum, *89 deceased, and sold by order of the Chancery Court at Sommerville, Tennessee, September Term, 1854.
“W. E. TebRX, [l. s.]
“S. Gr. CARNES, [l. s.]
“Robt. F. JarmaN, [i. s.]
“B. T. Bridgewater,”[l. s.]
The facts necessary to be noticed, are as follows: In 1854, Howell A. Tatum, in his own right as tenant by the courtesy, and as the next friend of his infant children, James H. and William H. Tatum, by petition, applied to the Chancery Court of Fayette County for an order to sell the lands, which had descended through his wife, Elizabeth N. Tatum, to his two minor children in fee. The ostensible object of the sale was, to reinvest the proceeds in other lands, for the benefit of the minors, in the State of Texas. The Court directed the sale, and appointed the father, Howell A. Tatum, special Commissioner, to superintend it. He accepted the trust, but gave no bond — none appears to have been required of him; but, on the 12th of December, 1854, at public auction, sold the land to the complainants, "for the aggregate sum of $8,390.10, and took their two several notes for the payment of the purchase money, with security. One due and payable on the 15th of December, 1855, and the other, a copy of which is above set out, one year thereafter. Afterwards, and before confirmation, on the 3d day of January, 1855, the Commissioner, and nominal payee of the note, sold, and by written agreement, transferred both notes to J. J. Polk, the defendant. Subsequently, the note first falling due was paid off, and the other lifted and dis *90 charged by the execution of a new note, upon which the judgment complained of, was rendered.
At the March Term, 1855, the sale was confirmed; and thereafter, at the May Term, 1857, the Chancellor directed an inquiry as to" whether the purchase money had been collected; and this inquiry was answered by the Master, that the notes executed for the purchase money, were on file in his office, and appear, from the indorsements thereon, to have been fully paid and satisfied; and thereupon, the title to the lands was divested, and vested in the complainants.
About this time, as it appears, the complainants had become doubtful as to the validity of their title, and on their suggestion, the plaintiffs in the petition for the sale of the land, appealed from the decree of the Chancellor, vesting title in the purchasers. The cause was heard in this Court at its April Term, 1858; and the entire proceedings, so far as they affected the interest of the minors, William IT. and James H. Tatum, were declared utterly null and void, for want of jurisdiction in the Chancery Court to sell the minor’s interest in remainder in the land. The Court further held, that the sale was operative to pass the life estate of Howell A. Tatum in the land; and that the purchasers, at their election, might hold and enjoy that interest during the existence of the estate of the life tenant; or otherwise, they might abandon their purchase altogether. But, if they elected to hold the life estate, Tatum would be liable to refund to them, whatever amount the purchase money paid by them, may exceed the reasonable value of the life estate in the land. And *91 on the other hand, if they elected to abandon their purchase altogether, they would be entitled to recover from Tatum, the tenant for life, the full amount of the purchase money, with interest thereon.
The Court dismissed the entire proceedings, but without prejudice to the rights of the purchasers, to avail themselves of the relief indicated in its decree, by a proper proceeding for that purpose; and of any other relief to which they may be entitled, should any be found to exist in their favor, either as against Howell A. Tatum, or his assignee of the obligation given for the purchase money.
The purchasers, who are the complainants in this case, we take it, although it does not distinctly appear, elected to confirm their purchase, so far as the life estate is concerned, and now bring this bill to stay the collection of the judgment recovered by Polk, the as-signee of Tatum, and for an account of the value of the life estate, together with the amount of money paid on their purchase.
The Chancellor refused the account, but enjoined the collection of the judgment; from which, both parties appealed to this Court.
The first question presented in the record, involves the consideration of the validity of the transfer of the note, executed to Tatum, for the purchase money of the land sold by him as Commissioner, under the order of the Chancery Court. Was the Commissioner’s assignment and delivery operative to pass the title to the purchaser? It is insisted, that it was, on the ground *92 that the note was negotiable, and that the defendant was an innocent purchaser for value, without notice.
This is a familiar principle, and if this case was affected by no other equity, might, perhaps, be conclusive of it. But it stands on very different grounds. The note, upon its face, discloses the fact, that it was executed in consideration of a tract of land, belonging to the heirs of Elizabeth N. Tatum, deceased, which had been sold, under an order of the Chancery Court at Sommerville, at its September Term, 1854. The sale was on the 12th of December, 1854, and the note executed on the same day, and assigned on the 3d of January following. Less than one month elapsed after the sale, before the transfer and assignment. A single term of the Court had not intervened, between the time at which the sale was ordered, as shown on the face of the note, before the assignment was made. No confirmation, in the ordinary course of practice in the Chancery Court, could have taken place, and the sale was incomplete until it was confirmed. The whole proceedings were in fieri; and the note itself little more than a bid on the land, until after confirmation.
Tatum, the Commissioner, and nominal payee of the note, was an officer of the Court, appointed under authority of law, and deriving all his powers under the decree of the Chancellor defining his duties. He bore a highly fiduciary relation to the beneficiaries in the sale, and could do nothing to their prejudice, or lawfully perform any act beyond the limits of the decree under which he was appointed, and from which he derived all *93 Ms powers. It conferred upon Mm no authority to sell, assign, or otherwise dispose of the note. The power to sell the land, of necessity, carried with it the power to receive the purchase money, and, under the decree of the Chancellor, to re-invest it for the benefit of Elizabeth Tatum’s heirs, in other lands in the State of Texas. He could, assuming that the decree was regular, make no other disposition of it, unless previously, by the Court thereunto authorized.
It is possible a case might be presented, at which a note, executed at a Commissioner’s or Master’s sale, negotiable on its ■ face, might «• be transferred in the due course of trade; but, in such case, public policy would demand that it appear, by the clearest and most irre-fragable proof, that the purchaser was an innocent holder, and nowise affected with notice. Judicial sales, and the securities given therefor, often affect the rights of minors and persons laboring under disability; and it is the policy of the law, that the interests of such persons be protected by the highest vigilance of the Courts of Equity, and they will always interpose to protect such persons against undue influence, fraud or imposition.
In this case, all the facts and circumstances, as well as the external evidence borne on the face of the note, concur in establishing the fact, that the defendant took this note with full knowledge of its true character, and that the beneficial interest in the note, did not belong to Tatum, his assignor. He, therefore, stands charged with notice, and in no ■ sense is entitled to the protection of an innocent holder. The assignment of the note by *94 the Commissioner, was a willful misapplication of the trust property, and a palpable violation of his duties as trustee, in which capacity he held the note. “In such a case,” says this Court, in the case of Lancaster vs. Allen, Guardian, etc., 1 Head, 326, “No argument is necessary to establish the proposition, that if a guardian, or other trustee, agree to do an act, which, in itself, is a manifest breach of trust, and the party who concurs in the act has notice of the trust, neither party will be heard, in a court of justice, to insist upon the performance of such an act. Such an agreement is regarded as a fraud upon the rights of the beneficiary, and all who participate in it knowingly, will be equally affected by it.
It follows, therefore, that the assignment was made without authority, and in violation of the special trust amd confidence reposed in the Commissioner, under the rules and orders of the Court; and that the defendant was affected with notice of the trust, and he can take no benefit under the assignment: 1 Story’s Eq. Jur., sec. 294.
But, it is insisted, that, inasmuch as the note assigned by the Commissioner, was liquidated and taken up by the execution of a new note, upon which the judgment complained of was rendered, that the complainants thereby waived all irregularities, and ratified and confirmed the assignment. We do not think so. The general rule is, that whenever any contract or conveyance is void, either by positive law or public policy, it is deemed incapable of confirmation, upon the maxim, “ Quod ab initio non valet, in traetu temporis non convaliscit.”
*95 But the rule is otherwise when the contract or conveyance is merely voidable, or turned upon circumstances of undue advantage, surprise, or imposition. Then, if it is deliberately and upon full examination, confirmed by the parties, such confirmation will avail to give it an ex post facto validity: 1 Story’s Eq. Jur., sec. 306.
A contract or conveyance, void in itself, is incapable of confirmation; while one voidable merely, may be confirmed by the party who may avoid it. But even then, to render the confirmation valid, it must be done with a knowledge, that the act he is doing, is to have the effect of confirming an impeachable transaction; otherwise, the act amounts to nothing as a confirmation: Cherry vs. Narson, 3 Yer., 369; Banks et al. vs. Thomas, Meigs’ R., 28.
On either ground, in this case, there was no confirmation. The assignment, as we have holden, being void, was incapable of confirmation; and on the hypothesis, that it was merely voidable, the record clearly shows, that, at the time the complainants paid the note first falling due, and renewed the other, they had no knowledge that either was impeachable in the hands of the defendant. They evidently acted in good faith, and in total ignorance, at that time, of any defects in their purchase, or irregularity in the transfer of their notes. Subsequently they were better informed, and at once suggested the steps which led to a discovery of their real condition, by a decree of this Court.
The decree of the Chancellor will he affirmed, so far as it enjoins the execution of the judgment at law, *96 and modified as to the account. A proper decree will be entered bere, directing the account as to the value of the life estate in the land, and the amount of the purchase money paid to the defendant, on the basis of the former decree of this Court.